115 T.C. No. 3

UNITED STATES TAX COURT

ESTATE OF MELVINE B. ATKINSON, DECEASED, CHRISTOPHER J.
MACQUARRIE, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20968-97.                    Filed July 26, 2000.

        R determined that the estate was not entitled to
deduct the charitable remainder interest in a trust
that was intended to be a charitable remainder annuity
trust (CRAT).  R challenged the validity of the CRAT on
two bases:  First, that the annual 5-percent minimum
distributions were not made as required by sec.
664(d)(1)(A), I.R.C., and second, that sec.
664(d)(1)(B), I.R.C., will be violated because the
trust corpus would have to be invaded to satisfy the
estate's obligation to pay one of the noncharitable
secondary beneficiary's apportioned part of the estate
tax.

        Held:  No charitable deduction is allowable
because:  (1) Sec. 664(d), I.R.C., requires that
minimum payments be distributed annually from the
inception of the CRAT to certain designated persons,
and these payments were not made, and (2) no portion of
a purported CRAT may be paid to anyone other than
designated noncharitable beneficiaries or statutorily

acceptable charitable entities, and here the trust will be invaded to pay the estate tax attributable to a portion of the estate received by one of the noncharitable beneficiaries.

David D. Aughtry and Christopher J. MacQuarrie, for petitioner.

Francis C. Mucciolo, for respondent.

GERBER, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $2,654,976. The deficiency arose in connection with the operation of a charitable remainder annuity trust (CRAT) created by decedent. The issue for our consideration is whether the trust functioned exclusively as a charitable remainder trust from its creation, thereby remaining a valid trust, so as to qualify the estate for a charitable deduction for the remainder interest.

FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Melvine B. Atkinson (decedent), died on June 7, 1993, at the age of 97, a resident of Miami Beach, Florida. The executor of her estate, Christopher J. MacQuarrie (MacQuarrie), also resided in Florida at the time the petition was filed.

On August 9, 1991, decedent placed stock worth $3,999,974 in trust under a document entitled "Melvine B. Atkinson Charitable Remainder Annuity Trust" (annuity trust) and named MacQuarrie as

trustee. At that time, she also created the Melvine B. Atkinson Irrevocable Trust (administrative trust) and placed stock worth $953,012 in that trust. MacQuarrie was named trustee for this second trust as well. On the same day, decedent signed her Last Will and Testament (will), naming MacQuarrie as personal representative.

The annuity trust provided that the trust would pay decedent an annuity equal to 5 percent of the fair market value of the assets of the trust as of the date of its creation, in equal quarterly payments, until her death. At least seven quarterly payments of $49,999.68 ($3,999,974 x 5% ÷ 4), totaling $349,997.76, should have been made to decedent before her death. No payments were actually made from the trust account during decedent's lifetime. The value of the trust was not diminished by the 5-percent payments. MacQuarrie was aware that the trust document and the statutes relating to CRAT's required that a minimum of 5 percent of the initial fair market value be paid out each year, and he was aware that decedent was not withdrawing money from the trust. No funds were ever transferred to decedent from the trust. The amount of $366,334.92, representing the amount due to decedent under the trust terms, was included as an asset of decedent's estate.

Upon decedent's death, the trust document provided that the same 5-percent annuity amount was to be distributed amongst

various named individuals (secondary beneficiaries) but only if those beneficiaries each furnished their share of the funds for payment of Federal estate and State death taxes for which the trustee might be liable upon Atkinson's death. One of those secondary beneficiaries was Mary Birchfield (Birchfield), who had cared for decedent from 1984 until her death.

As trustee, MacQuarrie informed the secondary beneficiaries of their right to receive an annuity under the trust and of the condition that they must pay the related Federal estate and State death taxes. After notifying the secondary beneficiaries of their need to elect to receive, MacQuarrie moved to compel their election. Ultimately, only Birchfield elected to take her share. Birchfield agreed to take the money, but informed MacQuarrie that the decedent had indicated that she would not be liable for her share of the estate taxes and that she possessed a notarized document from decedent to that effect. She informed MacQuarrie that she expected to be given the money without paying any estate tax. After increasingly hostile exchanges, MacQuarrie and a second attorney (who was also evaluating the administration of the estate) decided that it would be in the best interest of the trust to settle Birchfield's claim for the payment of any related taxes. MacQuarrie filed a motion seeking the court's approval of payment out of the administrative trust for any estate taxes related to the amount to be paid to Birchfield pursuant to the

annuity trust. The probate judge signed a proposed order to that effect. At that time $667,000, representing the annuity payments due to Birchfield accrued from decedent's death, was set aside for Birchfield. MacQuarrie delayed paying the accrued amount to Birchfield due to concern over a possible estate audit but motioned the court for approval to distribute the funds before a closing letter was obtained. The probate judge ordered that those funds be distributed to Birchfield, and a payment of $667,000 was made to Birchfield on December 31, 1996. Four additional payments were made to Birchfield towards her 5-percent annuity amount. No Federal estate or State death taxes were paid by Birchfield on the amounts she received. It was subsequently determined that funds from the administrative trust were insufficient to pay both the estate tax attributable to Birchfield's interest and the administration expenses and retirement of decedent's debts. Accordingly, it will be necessary to invade the CRAT to make up the shortfall.

Birchfield died of breast cancer on April 22, 1997. At the time of the estate valuation calculation, MacQuarrie had asked for and received an affidavit from Birchfield's doctor stating that Birchfield had a less than 5-year life expectancy. In accordance with section 7520,[1] the estate valued the charitable

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's
(continued...)

remainder interest from the trust considering the annuity payment to Birchfield based on her normal life expectancy.  Petitioner now asserts that this calculation had been done incorrectly and that a shorter life expectancy should have been used resulting in a greater charitable deduction for the remainder interest.

Respondent determined that the charitable remainder annuity trust was not a valid CRAT and that no charitable deduction was available to the estate.  Respondent also determined that several of the estate expenses were improperly deducted because they had not been paid.  Though respondent agrees that several of the deductions are now allowable, respondent continues to maintain that the charitable deduction taken by the estate should be disallowed.  Respondent determined that the trust did not continue to function as a charitable remainder annuity trust for two reasons:  First, when it failed to pay the required annual amount to decedent during her life and, second, when the trust ostensibly agreed to pay money towards the tax liability on the funds distributed to Mary Birchfield in accordance with the settlement.  Petitioner maintains that the estate qualifies for a charitable deduction under section 2055 and that it is entitled to a refund because a greater charitable deduction should have

---

[1](...continued)
death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

been allowed in light of the revised actuarial values for
Birchfield's annuity.

OPINION

The issue before us is whether, in its operation, decedent's
charitable remainder annuity trust met the statutory requirements
so as to qualify for a charitable deduction.  Specifically, we
consider whether the trust made the statutorily required payments
to decedent during her lifetime and the effect of the trust's
obligation to make payments to the secondary beneficiary after
decedent's death.  If we decide that the trust was operationally
qualified, we must then decide the appropriate life expectancy of
Mary Birchfield to decide whether petitioner is entitled to a
larger charitable deduction.  On brief and at trial,[2] respondent
maintained that the trust failed to qualify as a CRAT for
purposes of sections 2055 and 664 because of actions of the
trustee and/or trustor.  If the trust is so disqualified, section
2055 precludes the taking of a charitable deduction for the
charitable remainder interest.

Section 2055 provides for a deduction from the Federal gross
estate of an amount equal to the property passing from a decedent
to a charitable organization of the type described in subsection

---

[2] At trial, respondent also raised the issue of whether
certain expenses of the trust were reasonable.  After reviewing
the pertinent materials, we found that the reasonability of the
fees was a new issue and therefore could not be raised for the
first time at trial.  Though respondent raises the issue again on
brief, we adhere to our earlier ruling.

(a) of the section.  Subsection (a) includes organizations pursuing religious, charitable, scientific, literary, or educational purposes, or fostering amateur sports competition, or preventing cruelty to children or animals, from which no net earnings inure to a noncharitable private party and which do not participate in political campaigning.  See sec. 2055(a)(2). However, no deduction shall be allowed if a charity receives a remainder interest in property and if an interest in the same property also passes to an individual or a noncharitable entity, unless the charitable remainder interest is in a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund.  See sec. 2055(e)(2)(A).  The trust established by decedent purports to be a CRAT, and if it were, a gift of trust assets to charity would qualify for the charitable deduction.

Section 664(d)(1) contains the definition of a charitable remainder annuity trust.  A trust only qualifies as a CRAT if: (1) It pays out a sum certain, not less than 5 percent of the initial fair market value of the trust assets, annually or more frequently to one or more persons for either the lifetime of such person or a term of years (not more than 20 years); (2) no other payments, besides those described in (1), are paid to or for the use of a person other than an organization described by section

170(c);[3] (3) once the payments described in (1) cease, the remainder interest is transferred to or for the use of an organization described in section 170(c) or is retained by the trust for such a use; and (4) the value of that remainder interest is at least 10 percent of the initial fair market value of the trust assets. See sec. 664(d)(1). Furthermore, the terms of the trust must meet the statutory requirements, and the trust must operate within those terms from its creation. See sec. 1.664-1(a)(4), Income Tax Regs.

Five-Percent Distribution Requirement

Section 664 provides for a narrow exception to the general disallowance of deductions for charitable remainder interests under section 2055(e)(2)(A). In order to qualify, all section 664 requirements for CRAT's must be met upon creation and must continue to be met throughout the existence of the CRAT. See sec. 1.664-1(a)(4), Income Tax Regs. One of those requirements is that a minimum payment of 5 percent of the initial fair market value of the trust's assets be distributed each year to the noncharitable beneficiary. Petitioner argues that this distribution requirement should be set aside or ignored because it only serves to decrease the charitable contribution and because decedent had no need for the distribution. One of the

_____

[3] Sec. 170(c) describes organizations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster amateur sports competition, or for the prevention of cruelty to children or animals.

primary reasons for sections 2055 and 664 was to ensure that any amount set aside for charity was not diminished by payments to noncharitable beneficiaries.

The trust here, however, provides for four potential secondary beneficiaries who could have survived decedent and elected to receive payments that could have reduced the amount due to charity. An expressed focus of Congress in enacting the 5-percent distribution requirement was to prevent a charitable remainder trust from being used to circumvent the current income distribution requirements imposed on private foundations. See S. Rept. 91-552 (1969), 1969-3 C.B. 423, 481. If there were no such requirement, a charitable remainder trust could be used to accumulate trust income tax-free, while a private foundation would remain limited in the amount of income it might accumulate. See id.

Though the terms of the annuity trust met the letter of the statutory requirement providing for distributions equal to 5 percent annually, the trust did not operate in accordance with those terms. Petitioner bears the burden of proof in this matter, including the burden of substantiation. See Rule 142(a). Petitioner has presented no persuasive evidence that checks for the 5 percent annuity ever existed or were ever sent to decedent. Purportedly, MacQuarrie remitted checks to decedent that were not cashed. However, there is no record of canceled or uncanceled

checks, nor did petitioner present any evidence demonstrating a gap in the check sequence.  Though MacQuarrie testified that he made copies of checks written on the trust account, no such copies were presented to evidence these alleged payments.  On the other hand, we do have evidence that no payments were ever actually consummated before decedent's death.  The trust was never diminished by any payments during decedent's life.  Because the trust value was undiminished and no transfer of funds occurred, operationally the trust did not meet the express 5-percent requirement of the statute and cannot qualify for treatment as a charitable remainder trust.  Accordingly, section 2055 applies, and the estate is not entitled to a deduction for the bequest of a charitable split-interest.[4]

Petitioner alternatively argues that the trust should not be disqualified as a CRAT for the lack of payments to decedent because the failure of action took place during the trustor's lifetime.  Petitioner argues that section 1.664-1(a)(5), Income Tax Regs., allows for CRAT's created inter vivos to ignore all of the requirements established by section 664 until the moment of

---

[4] The additional failure of the trust attributable to the payments to the secondary beneficiary, when coupled with the more technical "5 percent rule" makes respondent's position that the trust failed operationally more compelling.  See infra pp. 14-15.

death.[5]  Petitioner argues that, under this provision of the

regulation, the trust did not come into being until the date of

decedent's death, and therefore no prior violation of the CRAT

requirements could disqualify the trust.  Petitioner's position

overlooks that this provision of the regulation is inapplicable

to the trust involved here--an irrevocable trust established and

funded by decedent during her lifetime.  The application of this

provision of the regulation, as reflected in its terms and

illustrated by the accompanying examples, see sec. 1.664-1(a)(6),

Income Tax Regs., is confined to testamentary trusts funded for

the first time after the grantor's death.  In the present case,

the trust is deemed created at the earliest time that neither the

grantor nor any other person is treated as the owner of the

entire trust.  See sec. 1.664-1(a)(4), Income Tax Regs.   Here,

---

[5] Sec. 1.664-1(a)(5), Income Tax Regs., provides:

> (5) Rules applicable to testamentary transfers--
>      (i) Deferral of annuity or unitrust amount.
> Notwithstanding subparagraph (4) of this paragraph
> and §§ 1.664-2 and 1.664-3, for purposes of
> sections 2055 and 2016 a charitable remainder
> trust shall be deemed created at the date of death
> of the decedent (even though the trust is not
> funded until the end of a reasonable period of
> administration or settlement) if the obligation to
> pay the annuity or unitrust amount with respect to
> the property passing in trust at the death of the
> decedent begins as of the date of death of the
> decedent, even though the requirement to pay such
> amount is deferred in accordance with the rules
> provided in this subparagraph.  * * *

decedent irrevocably relinquished ownership of the trust assets during her lifetime when she signed the trust documents stating that she was transferring the property to the trust on August 9, 1991. The CRAT was created on that date and was to function as a CRAT from that day forward, as required in the regulations. See id. The regulation providing for a deemed creation date upon the death of a trustor does not apply to an operating inter vivos trust that is to continue after the death of the grantor.

Though only mentioned in passing by petitioner, we also note that reformation of the trust pursuant to section 2055(e)(3) would not be an available remedy to petitioner. Section 2055(e)(3) provides that a trust or will may be reformed if it was improperly created and yet conforms to the CRAT requirements. The definition of "qualified reformation" demonstrates that the reformation is meant to address only those problems arising in the documentation of the trust. Section 2055(e)(3)(B) defines qualified reformation as "a change of governing instrument by reformation, amendment, construction, or otherwise". The legislative history indicates that reformation under section 2055 was created to address problems in trust creation as follows: "The bill provides a permanent rule permitting reformation of governing instruments of charitable split-interest trusts which do not meet the requirements of the 1969 Act rules." Staff of the Senate Comm. on Finance, 98th Cong. 2d Sess., Explanation Of Provisions Approved By The Committee On March 21, 1984, S. Prt.

98-169, Vol. I at 732 (Comm. Print 1984). Here the trust was validly formulated, and its terms were within the statutory threshold requirements. Accordingly, reformation is not needed to "rewrite" incorrect terms. The operational failure cannot be corrected by reformation. Therefore, the concept of reformation has no application here.

Payments to Birchfield

In addition to the failure in operation that occurred when no payments were made to decedent in accordance with the trust terms, the trust is disqualified from being a CRAT because it will be necessary to invade the trust to satisfy the obligations of the estate, which include the estate and death taxes apportionable to Mary Birchfield's beneficial interest in the trust. The estate bears the responsibility for those tax payments. As discussed earlier, the funds in the administrative trust are not sufficient to pay decedent's debts, the administration expenses, and estate and death taxes. The shortfall will have to come out of the trust corpus. Pursuant to section 664(d)(1)(B), no amount of the trust, other than the annuity, may be paid to or for the use of any person other than an organization described in section 170(c). Because the trust corpus will be invaded to pay expenses or debts of the estate, including estate taxes, a substantial part of the trust funds may be diverted from the charitable remainder. This is an additional

reason for concluding that the trust failed to function exclusively as a CRAT from the date of its creation.  See sec. 1.664-1(a)(6), Example (3), Income Tax Regs. (reservation of power to pay grantor's debts precludes qualification as CRAT); see also Rev. Rul. 82-128, 1982-2 C.B. 71 (ruling that "a trust does not qualify as a charitable remainder trust and no deduction is allowable under sections 170 and 2522 of the Code if it is possible that federal estate and state death taxes may be payable from the trust assets").

We need not address the valuation of Birchfield's life interest and any correlated value of the remainder interest.  At the time the payments were made out of the trusts to and on behalf of Birchfield, the estate did not qualify for the exception to section 2055(e)(2)(A) and thus was not entitled to any charitable deduction for the remainder interest in the trust.

On brief, respondent states that several deductions previously disallowed will now be allowed, although the deductions were not identified.  At trial, respondent questioned whether certain expenses were properly deducted due to uncertainty about whether they had been actually paid.  Testimony about payment of the expense was received in evidence.  On brief, respondent did not address the issue of payment, and, accordingly, we consider this issue to have been waived or

conceded.  See <u>Stringer v. Commissioner</u>, 84 T.C. 693, 708 (1985), affd. without published opinion 798 F.2d 917 (4th Cir. 1986).

To reflect the foregoing,

<u>Decision will be entered under Rule 155.</u>