T.C. Memo. 2009-64

UNITED STATES TAX COURT

SANTINI STONE, LLC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 126-07L.                    Filed March 25, 2009.

<u>Thomas H. Curran</u>, for petitioner.

<u>Daniel P. Ryan</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  Respondent's Appeals Office determined that a lien and proposed levy should be sustained against petitioner, which, pursuant to section 6330,[1] timely filed a petition for

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

review of the determination.  We review the determination for abuse of discretion.

## Background

The parties submitted this case fully stipulated, without trial, pursuant to Rule 122.  The stipulated facts and accompanying exhibits are incorporated herein by reference and are found as facts.  At the time the petition was filed, petitioner's business was in Massachusetts.

On January 17, 2003, petitioner filed a voluntary petition with the U.S. Bankruptcy Court for the District of Massachusetts (bankruptcy court) under chapter 11 of the Bankruptcy Code, 11 U.S.C. ch. 11, Reorganization.  At the time, petitioner had outstanding employment tax liabilities, interest, and penalties for taxable years 1998 through 2002.[2]  On March 31, 2003, respondent filed a claim against petitioner (called a "proof of claim" in bankruptcy parlance) with the bankruptcy court for $458,532, which included secured claims of $26,000, unsecured priority claims of $278,399, and general unsecured claims of $154,133.  Petitioner subsequently filed the first amended plan of reorganization (plan), which included, without objection from petitioner, all of respondent's aforementioned claims.  On

---

[2]Petitioner filed partnership returns (Forms 1065) for all years at issue.

December 18, 2003, the plan was confirmed by order of the bankruptcy court.

Under the plan, petitioner was to pay respondent $490.77 per month for 60 months on the secured claims and $7,086.41 per month for 44 months on the unsecured priority claims.[3]  The plan further provided that installments paid on the unsecured priority claims were to "first be applied to any 'trust fund' portion of such tax,[4] then to any 'non trust fund' portion of said tax, and then to any outstanding interest, in that order."  As to the general unsecured claims, petitioner was required to pay a single lump-sum dividend equal to 8 percent of respondent's listed claims of $154,133, or $12,330.64.[5]

On February 10, 2004, petitioner tendered a check in the full amount owed on the general unsecured claims.  Petitioner's

---

[3]The plan entitles respondent to collect interest on his secured and priority claims at a rate determined under sec. 6621. Petitioner, in calculating the installment payments due under the plan, estimated interest at a rate of 5 percent.

[4]As an employer, petitioner was required to withhold from its employees' paychecks the employees' personal income taxes and Social Security taxes.  See secs. 3102(a), 3402(a).  Because Federal law requires employers to hold these funds in "trust for the United States", sec. 7501(a), these taxes are commonly referred to as "trust fund" taxes, Slodov v. United States, 436 U.S. 238, 242-243 (1978).

[5]The general unsecured claims represent penalties assessed on respondent's unsecured priority claims for taxable years 1998 through 2002, with the exception of a sec. 6721 penalty assessed in taxable year 1998, included in respondent's proof of claim as an unsecured priority claim.  Notably, respondent claimed zero for the sec. 6721 penalty in his proof of claim.

$12,330.64 check, however, was dishonored that same day.  Over the following 7 months, an additional five checks totaling $19,366.78 were dishonored as well.[6]  Petitioner's delinquency prompted respondent to issue a default notice to petitioner.

On January 24, 2006, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under Section 6320 (lien notice), informing petitioner that respondent had filed notices of Federal tax lien for tax periods ending September 30, 1998, June 30, 1999, September 30, 1999, March 31, 2000, and September 30, 2000, through December 31, 2002, and for a civil penalty assessed under section 6721 for taxable year 1998.  The liabilities for the quarterly tax periods, as well as the civil penalty, were listed in the plan as unsecured priority claims.

On January 25, 2006, respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice), covering tax periods ending September 30, 1998, and June 30, 2001, through December 31, 2002, advising petitioner that respondent intended to levy to collect the unpaid employment tax assessments set forth in the levy notice.  These tax periods were also listed in the plan as unsecured priority claims.

---

[6]From Feb. 10, 2004, through Feb. 18, 2005, respondent received a total of $75,059.81 in checks from petitioner.  Checks worth only $43,362.39 were honored.

On February 13, 2006, petitioner requested a collection due process hearing (hearing) for both the lien and levy notices.[7] Respondent's Appeals Office assigned the case to Settlement Officer Lisa S. Boudreau (Settlement Officer Boudreau), an impartial officer with no previous involvement with the unpaid taxes.  On July 26, 2006, Settlement Officer Boudreau held a face-to-face hearing with petitioner's representative, Thomas Curran (Mr. Curran).

At the hearing Mr. Curran made the following contentions: (1) Respondent had not abated all Form 941, Employer's Quarterly Federal Tax Return, penalties as required under the plan; (2) the section 6721 civil penalty for taxable year 1998 was discharged in the bankruptcy case; (3) respondent was not properly designating plan payments; (4) the February 10, 2004, check was not dishonored; and (5) respondent was not charging the appropriate interest rate on petitioner's outstanding liability pursuant to the plan.[8]

On November 30, 2006, Settlement Officer Boudreau issued Notices of Determination Concerning Collection Action(s) Under

---

[7]In accordance with sec. 6320(b)(4), the lien hearing was held in conjunction with the levy hearing.

[8]In its brief petitioner did not address whether the amount of interest being charged petitioner on its outstanding liability is commensurate with the express terms of the plan.  Accordingly, we consider this issue to have been waived or conceded.  See Estate of Atkinson v. Commissioner, 115 T.C. 26, 35 (2000), affd. 309 F.3d 1290 (11th Cir. 2002).

Section 6320 and/or 6330 sustaining the lien filing and the proposed levy. In reaching her decision Settlement Officer Boudreau concluded that all Form 941 penalties had been abated and that the section 6721 civil penalty had not been discharged. Settlement Officer Boudreau further concluded that respondent was, in most cases, designating payments received as required under the plan.[9] She also found that petitioner had not met its burden in proving that the February 10, 2004, check was not dishonored. As to the interest charged on petitioner's outstanding liability, Settlement Officer Boudreau determined that the plan expressly provided for interest to be calculated "based on the rate established from time to time by the Secretary of the Treasury" as provided in section 6621.[10]

On January 3, 2007, petitioner timely filed a petition with the Court.

---

[9]Settlement Officer Boudreau intimated that compliance "will review the payments and correct any that were not properly designated."

[10]At the hearing petitioner proposed a short-term installment agreement as a collection alternative. Respondent did not, however, consider petitioner's request, given petitioner's failure to provide financial information and to remain current with its income and employment tax return filing and payment obligations. See McCorkle v. Commissioner, T.C. Memo. 2003-34 (refusal of an installment agreement not an abuse of discretion when taxpayer fails to provide financial information and is not current with estimated tax payments).

## Discussion

Sections 6320 (lien notice) and 6330 (levy notice) entitle a person to notice and the opportunity for a hearing when the Commissioner files a lien or proposes to levy in furtherance of the collection from the taxpayer of unpaid Federal taxes. At the required hearing the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise any relevant issue relating to the unpaid tax, the filing of the lien, or the proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability "if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues the taxpayer raised, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

Where the validity of the underlying tax liability is properly in issue, the Court will review the matter de novo. Respondent argues, and the Court agrees, that section 6330(c)(2)(B) precludes petitioner from challenging the underlying tax liabilities because respondent's submission of his proof of claim in the bankruptcy case afforded petitioner the opportunity to contest respondent's claims. See Kendricks v. Commissioner, 124 T.C. 69 (2005). Consequently, the validity of the underlying tax is not properly in issue and the Court will review Settlement Officer Boudreau's determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The abuse of discretion standard requires the Court to decide whether the Appeals officer's determination was arbitrary, capricious, or without sound basis in fact or law. Middleton v. Commissioner, T.C. Memo. 2007-120.

Petitioner asserts that Settlement Officer Boudreau abused her discretion in sustaining the lien filing and proposed levy. Specifically, petitioner maintains that Settlement Officer Boudreau erroneously determined the following: (1) The plan entitled respondent to collect $27,948.89 for the section 6721 civil penalty assessed in taxable year 1998; (2) petitioner had the burden of proving the February 10, 2004, payment was not dishonored; (3) petitioner's payments under the plan were

properly credited to trust fund taxes; and (4) respondent had abated all preconfirmation penalties.

A.  <u>Whether Settlement Officer Boudreau Abused Her Discretion in Determining That the Plan Entitled Respondent To Collect $27,948.89 for the Section 6721 Civil Penalty</u>

Petitioner claims the section 6721 penalty assessed for taxable year 1998 was discharged in the bankruptcy case as a general unsecured claim.  Respondent contends that the penalty was listed as an unsecured priority claim in the plan, entitling respondent to collect the $27,948.89 penalty upon default.

The parties agree that a confirmed chapter 11 plan will bind the debtor and all creditors to the terms of a confirmed plan. 11 U.S.C. sec. 1141(a) (2006); <u>In re Space Building Corp.</u>, 206 Bankr. 269 (D. Mass. 1996); <u>In re Penrod</u>, 169 Bankr. 910 (Bankr. N.D. Ind. 1994) (the plan is essentially a new and binding contract between debtor and creditor) affd. 50 F.3d 459 (7th Cir. 1995); <u>In re Stratton Group, Ltd.</u>, 12 Bankr. 471, 474 (Bankr. S.D.N.Y. 1981) (the appropriate remedy on default of a bankruptcy plan is enforcement of the plan promises).  Upon the taxpayer's default the Internal Revenue Service may enforce payments due under a bankruptcy plan through its own administrative processes. <u>In re Jankins</u>, 184 Bankr. 488 (Bankr. E.D. Va. 1995).

Respondent's proof of claim, incorporated within the plan without objection from petitioner, lists the section 6721 penalty as an unsecured priority claim.  Respondent was therefore well

within his rights to proceed with collection of the discharged tax liability. However, respondent's remedy is limited to the obligations contained in the plan. In re Depew, 115 Bankr. 965 (Bankr. N.D. Ind. 1989). Respondent assigned a value for the penalty at zero in the columns marked "Tax Due" and "Interest to Petition Date." Moreover, the total amount included for respondent's unsecured priority claims does not account for the penalty. Consequently, respondent is not entitled to collect the civil penalty. Settlement Officer Boudreau abused her discretion in determining to proceed with collection of the section 6721 penalty.[11]

---

[11]At the hearing Settlement Officer Boudreau erroneously concluded that because the penalty maintained its character as a tax following confirmation, In re Official Comm. of Unsecured Creditors of White Farm Equip. Co., 943 F.2d 752 (7th Cir. 1991), respondent could revive the original, preconfirmation debt upon petitioner's default. Respondent's reliance on White Farm is misplaced.

In White Farm, a debtor filed successive ch. 11 cases, the second for the purpose of liquidation after the confirmed plan in the first ch. 11 case could not be fulfilled. Despite the intervening confirmed plan the U.S. Court of Appeals for the Seventh Circuit found that a priority claim of the Commissioner for trust fund taxes retained its priority status in the second ch. 11 proceeding. In other words, the Court of Appeals recognized that tax characteristics survive confirmation and discharge.

White Farm does not operate, as Settlement Officer Boudreau would have it, to permit respondent to collect $27,948.89 more than respondent was entitled to under the plan. The creditor in White Farm sought priority in the second ch. 11 case for trust fund taxes that remained due under the first ch. 11 plan. The status of the tax claim did not entitle the creditor in White Farm, as respondent appears to argue here, to reinstate debt discharged under the first ch. 11 plan.

B.  <u>Whether Settlement Officer Boudreau Abused Her Discretion in
    Determining That Petitioner Had the Burden of Proving the
    February 10, 2004, Payment Was Not Dishonored</u>

Petitioner argues that the February 10, 2004, check for
$12,330.64 was not dishonored.  Respondent claims the check was
dishonored and that petitioner has failed to meet its burden to
prove otherwise.  We agree with respondent.

Petitioner has the burden of proving that the check was not
dishonored.  See <u>Hardie v. Commissioner</u>, T.C. Memo. 2007-335.
Respondent's Form 4340, Certificate of Assessments, Payments, and
Other Specified Matters, shows a dishonored check of $12,330.64,
and petitioner has submitted no evidence to contradict the
inference to be drawn from that entry that the check was returned
for insufficent funds.  Petitioner had ample opportunity to
produce a copy of the canceled check and failed to do so.
Consequently, petitioner failed to meet its burden.  Settlement
Officer Boudreau's determination on this issue was appropriate.

C.  <u>Whether Settlement Officer Boudreau Abused Her Discretion in
    Determining That Plan Payments Were Properly Allocated
    Towards Trust Fund Payments and That Respondent Had Abated
    All Preconfirmation Penalties</u>

Petitioner maintains that the plan payments were not
properly credited to trust fund taxes as required under the plan.
Respondent admits that the improper application of the payments
has not been corrected.  Indeed, respondent concedes on brief
that he is currently in the process of ensuring that two payments
labeled "Undesignated Bankruptcy" of $859.41 and $3,264.48 are

properly applied to the trust fund portion of petitioner's liabilities.

Petitioner also maintains that Settlement Officer Boudreau abused her discretion in determining that respondent had abated all penalties assessed before the confirmation of the plan. Respondent further concedes on brief, and respondent's Form 4340 reveals, that all penalties assessed before the confirmation of the plan have not been abated. In particular, penalties for tax periods ending September 30, 2001, and December 31, 2002, remain.

As to the foregoing concessions, we will remand this case to provide respondent the opportunity to correct these erroneous items and to comply with the terms of the plan and this opinion.

Petitioner's request for attorney's fees and costs will be denied because the request is premature. See Rule 231(a)(2).

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, unnecessary to reach, irrelevant, or moot.

To reflect the foregoing,

An appropriate order will be issued.