**[PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 01-16536

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 16 2002
THOMAS K. KAHN
CLERK

U.S. Tax Ct. No. 20968-97

ESTATE OF MELVINE B. ATKINSON, Deceased,
CHRISTOPHER J. MACQUARRIE, Executor,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from a Decision of the
United States Tax Court

_____

(October 16, 2002)

Before BIRCH and COX, Circuit Judges, and GEORGE*, District Judge.

In this tax appeal, we determine whether the failure of an estate to comply with

tax regulations regarding annual disbursements from a charitable remainder annuity

trust results in the complete denial of a charitable deduction, even when a substantial

---

* Honorable Lloyd D. George, U. S. District Judge for the District of Nevada, sitting by designation.

amount of money would flow to charity. The Tax Court held that no charitable deduction was allowable. Because the law is clear, we AFFIRM.

## I. BACKGROUND

Melvine B. Atkinson, an extraordinarily charitable woman, intended to create an estate plan that first provided for chosen beneficiaries for their lifetimes and then donated the remainder of the estate to several charitable organizations. On 9 August 1991, in pursuit of this goal, Atkinson signed a will and created two trusts: the Melvine B. Atkinson Charitable Remainder Annuity Trust ("the annuity trust") and the Melvine B. Atkinson Irrevocable Trust ("the administrative trust"). The annuity trust, funded with stock worth approximately $4 million, would provide a lifetime annuity of $200,000 to Atkinson and, at her death, would divide a similar annuity between four beneficiaries for the terms of their lives, provided that those beneficiaries agreed to pay their share of any estate taxes due at Atkinson's death. After the death of the last beneficiary, any amount remaining in the annuity trust would be donated to certain charitable groups. The administrative trust, funded with stock worth approximately $1 million, existed to pay the funeral expenses of Atkinson, any outstanding claims against her estate at the time of her death, and any applicable estate taxes.

The Tax Court found that no annuity payments were ever actually made to Atkinson from the assets of the annuity trust. The estate continues to claim that checks

2

were sent to Atkinson, but that Atkinson saw no need to cash them because her material needs were amply met by non-trust assets. However, this claim is undercut by the fact that the estate produced no copies of these checks or the cover letters that supposedly accompanied the checks to Atkinson, nor did the annuity trust's ledger reflect any outgoing annuity payments to Atkinson during her lifetime.

Upon Atkinson's death, the non-charitable beneficiaries next in line to the annuity trust's assets were compelled to make an election. Either they could accept the annuity and pay their share of Atkinson's estate taxes according to the terms of the annuity trust, or they could refuse Atkinson's gift. None of these non-charitable beneficiaries elected to accept the annuity under the terms of the trust. One potential beneficiary, Atkinson's caretaker Mary Birchfield, citing a putative inter vivos promise by Atkinson that Birchfield would not be held liable for any estate taxes resulting from her annuity from the trust, instigated litigation against the estate. Eventually, the trustee paid a settlement of $667,000 to Birchfield in satisfaction of all her claims against the estate and also resumed annuity payments to Birchfield in the amount set by the trust, which payments continued until Birchfield's death in 1997. Birchfield never paid her share of the estate taxes due on the money she received.

Before the settlement of Birchfield's claim, the estate was required to file its federal estate tax return. The taxable gross estate, according to the executor, consisted

3

of Atkinson's annuity rights under the trust ($366,334.92) as well as the date-of-death value of both the annuity and administrative trusts ($4,284,308 and $1,484,854, respectively). The estate claimed a charitable deduction in the amount of $3,894,535, representing the present value of the remainder interest in the annuity trust as of the date of Atkinson's death, measured under the assumption that Birchfield, whose claim against the estate had not been settled at that time, would prevail on that claim and be entitled to an annuity from the trust for the balance of her lifetime and, correlatively, that the charities would not take their remainder interest in the trust until Birchfield's death.

The Internal Revenue Service ("IRS") selected the estate's tax return for audit, and found that the estate was not entitled to take any charitable deduction because the annuity trust failed to comply with certain statutory procedures applicable to the deductibility of charitable remainders. With the disallowance of the charitable deduction, the IRS determined that the estate owed $2,654,976 in taxes. Because the administrative trust and the balance of other estate assets would not be sufficient to satisfy this tax liability, it became apparent that the remaining amount due would be paid by the annuity trust. The estate challenged the IRS's decision in the United States Tax Court, which agreed with the IRS that a charitable deduction was not appropriate. See Atkinson v. Comm'r, 115 T.C. 26, 32 (2000).

4

## II. DISCUSSION[1]

### A. Standards of Review

The Tax Court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. Davenport Recycling Assocs. v. Comm'r, 220 F.3d 1255, 1258-59 (11th Cir. 2000).

### B. Deductibility of Charitable Remainders

A federal estate tax is imposed on "the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." I.R.C. § 2001(a) (West 2002). A deduction is generally available for that portion of the estate that is directly devised to charitable organizations. Id. § 2055(a)(2). When property or money is given directly to the charity at the death of the decedent, then the amount of a charitable deduction that may be taken by the estate is easily calculated. However, when a decedent donates a remainder interest in property to charity, the valuation of the charitable deduction becomes more difficult. The estate tax return might be filed before the charity's interest in the property becomes possessory and can be conclusively valued for purposes of claiming a charitable deduction. This temporal disconnect provides an

---

[1] To the extent that additional arguments are raised by the estate and not discussed in the body of this opinion, we find that those arguments are without merit and deserve no substantial discussion. In addition, since we decide that the trust was not a CRAT because of its failure to pay Atkinson a lifetime annuity, we do not reach the issue of whether the trust additionally failed due to its exposure to estate tax liability.

avenue by which unscrupulous estates may claim a large charitable deduction, then manage the split-interest property in such a way that the benefit to the non-charitable beneficiaries is maximized, with the charity ultimately receiving much less value than that claimed as a deduction on the estate tax return.

Recognizing this problem, Congress strictly limited the deductibility of charitable remainders by requiring that such an interest must pass to the charity in the context of a "charitable remainder annuity trust" ("CRAT"), a "charitable remainder unitrust," or a "pooled income fund." Id. § 2055(e)(2)(A). The trust in this case was established as a CRAT and does not fit the definition for the other two options. A CRAT, by statutory definition, is a trust

> (A)   from which a sum certain (which is not less than 5 percent of the initial net fair market value of all property placed in trust) is to be paid, not less often than annually, to one or more persons (at least one of which is not a [charitable organization] and, in the case of individuals, only to an individual who is living at the time of the creation of the trust) for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals,
>
> (B)   from which no amount other than the payments described in subparagraph (A) may be paid to or for the use of any person other than [a charitable organization],
>
> (C)   following the termination of the payments referred to in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, [a charitable organization] or is to be retained by the trust for such a use.

6

<u>Id</u>. § 664(d)(1) (West 1986) (amended 1997).[2]

Paragraph "(A)" of the CRAT requirements limits the interest of the non-charitable beneficiaries to a yearly sum certain based on the initial fair market value of the trust's assets. This fixed interest eliminates the impetus for investments that maximize the non-charitable beneficiaries' interests, and, accordingly, prevents the redirection of trust assets away from the charitable remaindermen. As noted by the Tax Court, this requirement also ensures that the trust does not accumulate untaxed wealth for charities, which would sidestep the income distribution requirements for private foundations. <u>See</u> <u>Atkinson</u>, 115 T.C. at 32. The CRAT is required to pay the non-charitable annuity from the first year of its existence. Treas. Reg. § 1.664-2(a)(5) (as amended in 2001).[3]

---

[2] This statement of the CRAT definition was the one in force when Atkinson established her annuity trust in 1991. In 1997, Congress amended the CRAT definition, <u>see</u> I.R.C. § 664(d)(1) (West Supp. 2001), but those amendments are not retroactively applicable to the trust at issue in this case.

[3] We defer to administrative regulations as long as they implement a Congressional mandate in a reasonable manner. <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 845, 104 S. Ct. 2778, 2783 (1984). As noted by this court in <u>RJR Nabisco, Inc. v. United States</u>, 955 F.2d 1457, 1464 (11th Cir. 1992):

> The Supreme Court has been particularly deferential in the area of tax laws because it is "not in the business of administering the tax laws of the Nation. Congress has delegated that task to the Secretary of the Treasury, 26 U.S.C. § 7805(a), and regulations promulgated under this authority, if found to 'implement the congressional mandate in some reasonable manner must be upheld.'" <u>Cartwright</u>, 411 U.S. at 550, 93 S. Ct. at 1716 (citing <u>United States v. Correll</u>, 389 U.S. 299, 307, 88 S. Ct. 445, 449, 19 L.Ed.2d 537 (1967)).

Paragraph "(B)" prohibits any disbursement of trust assets beyond the fixed annuity interests and the charitable remainder, again buttressing the charitable remainder and the correlative deduction. Should the trust leave open the possibility of making other payments beyond the annuity, it is disqualified as a CRAT. Treas. Reg. § 1.664-1(a)(6) (Example 3) (as amended in 2001). Each of these requirements attempts to make the valuation of the charitable remainder at the death of the grantor conform more closely to the actual interest that will one day pass to charity.

To preserve the estate's ability to claim a charitable deduction for a remainder interest in property, the trust must not only be set up as a CRAT, but it must also comply with the CRAT statutory requirements from its formation to the final disposition of the trust's assets. Treas. Reg. § 1.664-1(a)(4) (as amended in 2001). As noted by the IRS in this litigation, "without the limitations . . ., the intent of Congress in enacting [the CRAT rules] could be defeated by the creation of CRATs that have their documents in order but that fail to function as CRATs after their creation." Appellee's Brief, at 32.

### C. Atkinson Annuity Trust's Compliance with CRAT Regulations

#### 1. Applicability of CRAT Regulations

The estate argues that the CRAT rules have no application where, as here, none of the non-charitable beneficiaries ever qualified under the terms of the trust.

8

According to the estate, the failure of the non-charitable beneficiaries to qualify means that no interest "passed," within the meaning of § 2055(e)(2),[4] both to these non-charitable beneficiaries and to the charities so as to invoke the CRAT rules. The IRS regulations refute the estate's argument. According to Treas. Reg. § 20.2056(c)-1(a)(5) (as amended in 1994), property interests transferred during the life of the decedent are immediately considered to have "passed" from the decedent to the recipient for purposes of § 2055(e)(2).[5] Though these interests may be contingent, the contingency does not mean that the interests do not immediately "pass" unless the possibility of the contingency occurring is so remote as to be negligible. Treas. Reg. § 20.2055-2(e)(1)(i)

---

[4] The relevant text of § 2055(e)(2) reads as follows:

Where an interest in property (other than an interest described in section 170(f)(3)(B)) passes or has passed from the decedent to a [charitable use or beneficiary], and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a [non-charitable use or beneficiary], no deduction shall be allowed under this section for the interest which passes or has passed to [the charitable use or beneficiary] unless–

(A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust . . . or a pooled income fund . . ., or

(B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly).

[5] The regulations under § 2055(e)(2) point to corresponding regulations under § 2056(c) for purposes of determining whether an interest has "passed," thus the citation to these regulations in the text.

9

(as amended in 2001). The non-charitable beneficiaries each received a property interest, contingent on their acceptance of their share of the estate's tax burden, in the trust upon its establishment. The possibility of at least one beneficiary accepting the trust's terms and fulfilling the contingency cannot be said to be remote; therefore, their interests immediately "passed" under § 2055(e)(2) when the trust was established. From that moment on, the trust was required to operate as a CRAT in order to preserve its ability to qualify for a deduction of the charitable remainder.

## 2. Adherence to Regulations

The documents that establish the Atkinson annuity trust track the CRAT requirements to the letter. However, the Atkinson annuity trust failed to comply with the CRAT rules throughout its existence. Yearly annuity payments to Atkinson were not made during her lifetime. Accordingly, since the CRAT regulations were not scrupulously followed through the life of the trust, a charitable deduction is not appropriate.

The estate complains that this stringent focus on the CRAT rules amount to a denial of a substantial charitable deduction because of what amounts to a "foot fault," or a minor mistake. However, the scheme established by Congress is specifically designed to combat the problems associated with the donation of charitable remainders. In exchange for the significant benefits of allowing a present charitable deduction, even

10

when the actual charitable donation is not to occur until the remainder interest in the property becomes possessory, and in allowing the assets of the trust to grow tax-free, the Code requires adherence to the CRAT rules. It is not sufficient to establish a trust under the CRAT rules, then completely ignore the rules during the trust's administration, thereby defeating the policy interests advanced by Congress in enacting the rules themselves. Despite the certain charitable donation in this case, the countervailing Congressional concerns surrounding the deductibility of charitable remainders in general counsel strict adherence to the Code, and, barring such adherence, mandate a complete denial of the charitable deduction.[6]

## III. CONCLUSION

---

[6] We note that no argument was made by the estate that the trust could be reformed under § 2055(e)(3) to comply with the Code's requirements and, thus, that the estate would be entitled to a charitable deduction. Thus, we express no opinion on that matter.

From our review of the record and the parties' briefs, we find no reversible error. Because the annuity trust did not adhere to the CRAT regulations throughout its existence, the charitable remainder interest does not qualify as a charitable deduction.

**AFFIRMED.**