[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 21, 2003
THOMAS K. KAHN
CLERK

_____

Nos. 02-14910 & 02-14911

_____

Tax Court Docket Nos. 15165-98
2961-97

FLORIDA PROGRESS CORPORATION
AND SUBSIDIARIES,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL
REVENUE,

Respondent-Appellee.

_____

Appeals from a Decision of the
United States Tax Court

_____

**(October 21, 2003)**

Before ANDERSON and BIRCH, Circuit Judges, and PROPST*, District Judge.

PER CURIAM:

_____

*Honorable Robert B. Propst, United States District Judge for the Northern District of
Alabama, sitting by designation.

Petitioner-Appellant, Florida Progress Corporation, appeals the Tax Court's decision denying Florida Progress's request to treat certain bill credits and checks issued to its customers as "refunds" entitled to preferential tax treatment under 26 U.S.C. §1341(a). The Tax Court ruled that because the putative refunds were really disguised rate reductions, they were not eligible for treatment under that provision.

I.

The facts in this case are fully set forth in the Tax Court's opinion. See Florida Progress Corp. & Subsidiaries v. Commissioner, 114 T.C. 87 (2000). Those facts may be summarized for purposes of this appeal.

Florida Progress operates Florida Power Corporation ("Florida Power"), a public utility that provides electricity service to over 1.3 million retail customers in central and northern Florida. Florida Power also provides wholesale electricity to other retail providers. Florida Power is subject to the rules and regulations of both the Florida Public Service Commission ("FPSC") and the Federal Energy Regulatory Commission ("FERC"). The FPSC regulates the rates Florida Power can charge its retail customers, while the FERC regulates the rates Florida Power

2

can charge wholesale customers.

Florida Power was allowed to treat as part of its cost of providing service anticipated tax liabilities. Because Florida Power used one method of accounting for tax purposes and another for ratemaking purposes, the company sometimes collected more for taxes than it actually had to pay in a given year. Normally, any excess amount would be put into a deferred tax account, where it would remain until the differences between the accounting methods reversed themselves over time (as one would normally expect).

In 1986, Congress lowered the corporate income tax rate from 46 to 39.95 percent in 1987 and to 34 percent in 1988. As a result, money that Florida Power put into deferred income tax accounts in anticipation of future tax liabilities exceeded the amount of the actual liabilities, resulting in a windfall to Florida Power. As a result of this windfall, the FPSC, acting pursuant to an agreement between the parties, ordered Florida Power to reduce its ongoing rates to account for its reduced tax liability. In addition, in both 1987 and 1988, Florida Power was ordered (pursuant to the parties' agreement) to return the amounts representing excess deferred income taxes to retail customers over a twelve month period in the form of bill credits. Each customer's bill, under the heading "Monthly Rate Reduction," listed a credit (designated "CR") reflecting the amounts being

3

returned.

Florida Power also entered into an agreement with its wholesale customers in which it agreed to return excess deferred income taxes to those entities for the 1987 and 1988 tax years. Because the parties were unable to work out a settlement agreement for both the 1987 and 1988 years until after the first of each year, Florida Power provided checks to customers to cover the bill credits that would have otherwise issued in the months preceding the settlement. For the period following the settlement agreement, bill credits were issued.[1]

Florida Power sought to treat the bill credits and checks as refunds eligible for treatment under 26 U.S.C. §1341. The Commissioner denied Florida Power's request for §1341 treatment. The Tax Court ruled in favor of the Commissioner, concluding that Florida Power was not eligible for treatment under that provision. Florida Power appeals that decision.

II.

---

[1]For example, in 1987, the settlement agreement was not finalized until October 1987. Under that agreement, the wholesale customers were entitled to credits beginning in January of 1987. However, because credits were not issued during the time that the settlement agreement was being finalized, Florida Power agreed to provide those customers with checks representing the credits for that period. For the period following the settlement agreement, wholesale customers received bill credits, much like their retail counterparts.

In <u>United States v. Lewis</u>, 340 U.S. 590, 71 S.Ct. 522 (1951), a taxpayer claimed as income on his 1944 return $22,000 that he received as a bonus. Two years later, in a suit in state court, it was determined that the bonus had been improperly computed, with the result that the taxpayer had to return $11,000 to his employer. The taxpayer sought to recompute his 1944 taxes, but the Government took the position that he could only deduct the $11,000 as a loss on his 1946 return. The Supreme Court agreed. <u>Id.</u> at 591-92, 71 S.Ct. at 523. Justice Douglas dissented, concluding that it was "unconscionable" for the Government to "keep the tax after it is shown that the payment was made on money which was not income to the taxpayer." <u>Id.</u> at 592, 71 S.Ct. at 523-24.

In direct response to the <u>Lewis</u> decision and the perceived inequities resulting therefrom, Congress enacted §1341, which provides relief to taxpayers who restore a substantial amount of money held under a claim of right.[2] The

---

[2]In relevant part, §1341 provides that:

> If - (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item; (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and (3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:
>
>> (4) the tax for the taxable year computed with such deduction; or

object of this section is to put the taxpayer in the same position he would have been in had he not included the item as gross income in the first place. Dominion Resources, Inc. v. United States, 219 F.3d 359, 363 (4th Cir. 2000).

The provision has three basic requirements. First, the item in question must have been included as gross income for a prior taxable year because "it appeared" that the taxpayer had an unrestricted right to such item.[3] I.R.C. §1341(a)(1). Second, the taxpayer must be able to deduct the item in the taxable year because it was established after the close of the prior taxable year that the taxpayer did not have an unrestricted right to such item. I.R.C. §1341(a)(2). Finally, the amount of the putative deduction must exceed $3000. I.R.C. § 1341(a)(3). If these requirements are met, the taxpayer has two choices: he can deduct the item from the current year's taxes, or he can claim a tax credit for the amount his tax was

---

> (5) an amount equal to–(A) the tax for the taxable year computed without such deduction, minus (B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

26 U.S.C. § 1341(a).

[3]The Commissioner argues that a taxpayer cannot use §1341 if it had an actual right to the income in question rather than an "apparent" one. In light of our disposition of the case, we have no occasion to address the merits of this argument. Cf. Dominion Resources, 219 F.3d at 363-68 (rejecting this argument).

increased in the prior year by including that item.[4]

Florida Power insists that it was forced to restore money previously collected under a claim of right to its customers in the form of bill credits and checks. Because the Tax Reform Act of 1986 lowered the applicable tax rate from forty-six to thirty-four percent, Florida Power contends that it would have been better off it had never claimed that income in the first place, thereby reducing its income at a time when it was subject to a higher tax rate. Thus, Florida Power claims that this is a paradigmatic case for the application of §1341.

The Commissioner responds by pointing out that §1341 only applies where a party is able to claim a deduction under another provision of the code. According to the Commissioner, the most likely candidate for such a deduction, I.R.C. §162(a), which provides a deduction for "ordinary and necessary" business

---

[4]An illustration may be helpful. Suppose a taxpayer claimed as income $10,000 under a claim of right, but that in the following year, 2001, it was determined that the income belonged to another party, such that the taxpayer had to return that income. Further suppose that the forty percent tax rate in effect in 2000 was reduced to twenty percent in 2001. In the absence of § 1341, a taxpayer could conceivably claim as a deduction in 2001 the $10,000 loss noted above, which would lower the taxpayer's applicable tax for that year by $2000. However, because the taxpayer paid a higher rate when the income was originally claimed, the taxpayer's $2000 in savings in 2001 would not makeup for the $4000 lost when the taxes were originally paid in 2000.

Section 1341 addresses this problem by providing the taxpayer with the option of either (a) taking the deduction based on the amount of the income restored or (b) allowing the taxpayer to credit against his current tax liability the amount previously paid on the restored item. Thus, in the example above, the taxpayer could either take the deduction, lowering its tax liability by $2000, or it could credit the $4000 it previously paid in taxes against its tax liabilities in 2001.

expenses, applies to refunds, not rate reductions. The Commissioner contends that the bill credits and checks are nothing more than disguised rate reductions, and that like rate reductions, they are not deductible business expenses under the code. Cf. Wicor, Inc. v. United States, 263 F.3d 659, 661-62 (7th Cir. 2001) (holding that rate reductions are not deductible expenses under the Internal Revenue Code).

Thus, there are two issues integral to the resolution of this appeal. First, whether §1341 applies where a taxpayer is unable to claim a deduction under another provision of the tax code. And, second, assuming that § 1341 is triggered by a deduction in another part of the code, whether the bill credits and checks issued here are deductible business expenses under I.R.C. §162(a). We address these issues in turn.

A.

Florida Power's primary argument on appeal is that the bill credits and checks at issue here are deductible under §1341. Put differently, Florida Power argues that §1341 stands on its own as the source of the applicable deduction and that it (§1341) does not depend on a deduction authorized by another provision in the code. Neither the language of the statute nor the supporting regulations support that interpretation.

Subsection (a) of §1341 provides that "if" three requirements are met, "then" the taxpayer is entitled to preferential treatment under either §1341(a)(4) or (5). 26 U.S.C. §1341(a) (emphasis added). One of those requirements is that "a deduction" be "allowable for the taxable year because it was established after the close of such prior taxable year . . . that the taxpayer did not have an unrestricted right to such item . . . ." 26 U.S.C. §1341(a)(2). The provision itself does not indicate whether a deduction should be allowable. That answer must be found in another provision of the code.[5] See See also United States v. Skelly Oil, 394 U.S. 678, 683, 89 S.Ct. 1379, 1383 (noting that the deductions referenced under §1341 "must be determined . . . by reference to the applicable sections of the Code . . . .").

The regulations interpreting this provision confirm this conclusion. In pertinent part, those regulations provide that:

> If, during the taxable year, the taxpayer is entitled under other provisions of chapter 1 of the Internal Revenue Code of 1954 to a deduction of more than $3,000 because of the restoration to another

_____

[5]Florida Progress also suggests that the language in § 1341(b)(2) supports its interpretation of the statute. Generally speaking, that provision excludes inventory sales and any repayments resulting therefrom from the operation of § 1341(a). However, that exception itself contains an exception for public utilities that are required to issue refunds by regulatory authorities. Thus, refunds issued by a utility are otherwise eligible for treatment under § 1341(a). However, this provision does not address whether a purported "refund" is in fact an allowable expense under the code, and under § 1341(a), that requirement must be met before § 1341(a) treatment is authorized.

of an item which was included in the taxpayer's gross income for a prior taxable year (or years) under a claim of right, the tax imposed by chapter 1 of the Internal Revenue Code of 1954 for the taxable year shall be the tax provided in paragraph (b) of this section.

26 C.F.R. § 1.1341-1(a)(1) (emphasis added). We must defer to that interpretation of the statute unless it is unreasonable or plainly inconsistent with the statute. Estate of Atkins v. Commissioner, 309 F.3d 1290, 1294 n.3 (11th Cir. 2002). Given the language of the statute, that interpretation is hardly unreasonable.

There is, in short, no basis for construing §1341 as the source for any deduction that might apply here. Even Dominion Resources, the case Florida Power principally relies on to support its claim that it is entitled to §1341 treatment, recognized that a deduction, to the extent one is authorized, must be found in another provision of the code. See 219 F.3d at 368-70 (addressing the issue of whether claimed deduction was an ordinary and necessary business expense under 26 U.S.C. §162(a)). Thus, we now turn to that question.

B.

Because §1341 does not, itself, authorize the putative deduction claimed by Florida Power, we turn to Florida Power's alternative argument that the items at issue here are deductible under I.R.C. §162(a) as "ordinary and necessary"

business expenses. A true refund is unquestionably a deductible business expense. See Dominion Resources, Inc. v. United States, 219 F.3d 359, 368 (4th Cir. 2000). The Commissioner, however, contends that the bill credits and checks at issue here were not really true refunds as that term is commonly understood but were instead rate reductions, i.e., reductions in the amount of income the utility received over a twelve month period. The Tax Court found in favor of the Commissioner on this issue, concluding that the bill credits and checks resembled rate reductions, not refunds. Thus, the crucial issue is whether the amounts at issue are refunds (and thus deductible), see Dominion Resources, 219 F.3d at 268, or rate reductions (and thus not deductions from income but rather a reduction of income), see Wicor, Inc. v. United States, 263 F.3d 659, 661-62 (7th Cir. 2001) (holding that the Internal Revenue Code does not provide a deduction for customer discounts) and MidAmerican Energy Co. v. Commissioner, 271 F.3d 740, 743 (8th Cir. 2001) (concluding that a discount on future profits is not a deductible expense).

A threshold issue we must decide in addressing this question is what standard of review applies to the Tax Court's determination. The Commissioner argues that this was a factual finding, subject to review under the clearly erroneous standard. Florida Power, on the other hand, contends that the Tax Court merely

11

applied a legal standard to an undisputed set of facts, and that we can review the court's application of that legal standard <u>de</u> <u>novo</u>.

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." Fed. R. Civ. P. 52(a). That conclusion applies equally to "facts [that] are based on stipulations entered into by the parties." <u>Bone v. Commissioner</u>, 324 F.3d 1289, 1293 (11th Cir. 2003). Unfortunately, "Rule 52(a) does not furnish particular guidance with respect to distinguishing law from fact," <u>see</u> <u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 288, 102 S.Ct. 1781, 1790 (1982), and courts have been unable to articulate a "rule or principle that will unerringly distinguish a factual finding from a legal conclusion." <u>Id.</u> The Supreme Court on numerous occasions has noted the "vexing nature of the distinction between questions of fact and questions of law." See <u>Id.</u> (citing <u>Baumgartner v. United States</u>, 322 U.S. 665, 671, 64 S.Ct. 1240 (1944)). <u>See also</u> <u>Cooter & Gell v. Hartmax Corp.</u>, 496 U.S. 384, 401, 110 S.Ct. 2447, 2458 (1990) ("This Court has long noted the difficulty of distinguishing between legal and factual issues."). In <u>Miller v. Denton</u>, the Court recognized that the decision to label a particular issue as a question of fact as opposed to a question of law reflects, at least in part, a desire to allocate tasks among the judiciary. See <u>Miller v. Denton</u>, 474 U.S. 104, 113-14, 106 S.Ct. 445, 451

12

("Perhaps much of the difficulty in this area stems from the practical truth that the decision to label an issue a 'question of law,' a 'question of fact,' or a 'mixed question of law and fact' is sometimes as much a matter of allocation as it is of analysis.") (citing Monaghan, Constitutional Fact Review, 85 Colum. L. Rev. 229, 237 (1985)).

Though we too are unable to articulate a guiding principle that will "unerringly distinguish a factual finding from a legal conclusion," see Swint, 456 U.S. at 288, 102 S.Ct. at 1790, we conclude that the Tax Court's determination that the bill credits and checks resembled rate reductions rather than refunds is a factual finding subject to deferential review. The clearly erroneous standard applies not only to historical facts but also "factual inferences from undisputed basic facts." Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200 (1960). That rule applies with equal force to findings issued by the Tax Court. Id. Here, the Tax Court's conclusion that the bill credits and checks resembled rate reductions, not refunds, was simply a factual inference it made after reviewing the underlying historical facts in the stipulated record.

Estate of Wallace v. Commissioner, 965 F.2d 1038 (11th Cir. 1992), cited by Florida Power, provides a useful contrast. The court there held that a tax court's findings "which result from the application of legal principles to subsidiary facts

13

are subject to de novo review." Id. at 1044. At issue there was whether a taxpayer qualified as a "limited entrepreneur" in connection with a cattle feeding operation, a determination that depends in part on whether the taxpayer "actively participate[d] in the management of [that] enterprise." 26 U.S.C. § 464(e)(2). Though the statute itself does not define "active participant," the legislative history provided a number of factors that should be considered in making that determination. We held that the district court's weighing of those factors to determine whether a taxpayer qualified as an "active participant" was an application of law to fact that could be reviewed de novo. See Wallace, 965 F.2d at 1044.

This case is far different from Wallace. For an item to qualify as an "ordinary and necessary" expense under § 162(a), that item must in fact be an "expense," not a reduction in income. See Wicor, 263 F.3d at 662 ("[W]e can't locate any provision in the Internal Revenue Code that allows a seller to take a deduction for a discount ...."). To determine whether the bill credits and checks were in fact expenses, not reductions in income, the Tax Court looked at a number of the undisputed facts in the record and made inferences therefrom. It did not, as in Wallace, weigh factors prescribed by Congress in order to determine whether the transactions in question constituted rate reductions rather than refunds. The

14

Tax Court's findings are similar to those in other cases where courts have been asked to determine what the "substance" of a transaction was, and those determinations have historically been treated as questions of fact. See Weisbart v. Commissioner, 564 F.2d 34, 37 (10th Cir. 1977) (recognizing that in addressing the "character" of a particular transaction, "[f]indings as to what is substance in a transaction are to be treated as questions of fact."). Cf. Crowley v. Commissioner, 962 F.2d 1077, 1080 (1st Cir. 1992) (noting that "[t]he determination whether the parties to the transaction intended a loan or a dividend presents an issue of fact."); Duberstein, 363 U.S. at 291-92, 80 S.Ct. at 1200 (reviewing for clear error the determination of whether a transfer was a gift).

Florida Power complains that if we construe the Tax Court's determination as a factual finding, that finding might turn into an "outcome-determinative legal conclusion." But that is true for any number of determinations that are unquestionably factual findings. See, e.g., Halliburton Co. v. Commissioner, 946 F.2d 395, 399 (5th Cir. 1991) (affirming judgment in favor of the taxpayer on its claim that it had no "reasonable" prospect of recovery – a prerequisite for claiming a loss, because tax court's factual findings were reasonable); Thomas v. Commissioner, 792 F.2d 1256, 1260 (4th Cir. 1986) (tax court's finding that a program lacked a predominant profit objective was not clearly erroneous, and as

such, tax court's judgment that taxpayers were not entitled to a deduction was due to be affirmed).

Whether a transaction constitutes a refund or a rate reduction is a fact-intensive inquiry, and it is one that often does not produce a definitive answer. Because that inquiry is guided more by human experience and common sense than any fixed legal principle, we conclude that the determination as to whether a transaction is a refund or a rate reduction is a question of fact subject to review under the clearly erroneous standard.[6] Cf. Duberstein,363 U.S. at 292, 80 S.Ct. at 1200 (affirming as not clearly erroneous a finding of fact that a transfer was not a gift where that conclusion was "based in the sort of informed experience with human affairs that fact-finding tribunals should bring to this task.").

Applying that standard, we cannot say that the Tax Court's finding was clearly erroneous. The Tax Court determined that the bill credits and checks issued to its customers resembled rate reductions, not refunds. It based its conclusion on the fact that no interest component was included with the refunds; Florida Power set off the amount to be refunded against future amounts owed for

---

[6]The applicable legal principle is that a refund is a deductible expense, see Dominion Resources, 219 F.3d at 368, but a rate reduction is not, see Wicor, Inc. v. United States, 263 F.3d at 661-62. However, whether a particular item is a refund or a rate reduction is, we believe, a question of fact.

16

its services on customers' bills rather than actually returning money to those customers;[7] and credits and checks were based on current consumption, not upon the amounts each customer individually overpaid. In addition, we believe it is significant that Florida Power's invoices to its customers called the amounts "monthly rate reductions." The Supreme Court has "observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses,[8] nevertheless, once having done so, he must accept the tax consequences of his choice." Commissioner v. Nat'l Alfalfa Dehydrating and Milling Co., 447 U.S. 134, 149, 94 S.Ct. 2129, 2137 (1974).

---

[7]As the stipulated facts make clear, checks were issued to certain wholesale customers only because the funds that those checks represented should have been returned to customers in the preceding months under FERC regulations but were not due to a delay between Florida Power and its wholesale customers in settling a complaint that had been filed with the FPSC. Florida Power concedes that had there been no delay, they would have issued bill credits to those customers in the preceding months. Thus, the checks really represent nothing more than accumulated bill credits, and as such, the Tax Court did not place any independent significance on the fact that checks were issued here.

[8]Florida Power has argued with respect to various items in this case that its treatment of those items was compelled by the regulatory agencies. However, Florida Power makes no such argument with respect to its treatment of the amounts at issue here as rate reductions on its bills to its customers.

For example, another factor which would support the Tax Court's characterization of these amounts as rate reductions is the fact that Florida Power accounted for these amounts on its books by charging them as a reduction in sales revenue. We have discounted this factor because Florida Power insists that it was required to do so by the regulatory agencies. But see Commissioner v. Idaho Power Co., 418 U.S. 1, 15, 94 S.Ct. 2757, 2766 (1974) (although a court should give some, but not controlling weight to the fact that the company was required to capitalize costs, "where a taxpayer's generally accepted method of accounting is made compulsory by the regulatory agency and that method clearly reflects income, it is almost presumptively controlling of federal income tax consequences.").

Florida Power notes that there are a number of practical reasons why refunds cannot be made to specific customer classes (including the fact that many customers leave the service area without leaving a forwarding address). In light of these practical difficulties, Florida Power contends that it is sufficient if they provide credits to the customer classes overcharged. We have some sympathy for Florida Power's contention that precise matching of overcharges to the specific customers affected may have been difficult (at least with respect to retail customers); for example, we suspect (but need not hold) that the Tax Court would have found that the amounts at issue resembled refunds, and not rate reductions, if the amounts had been paid in a lump sum, or even if spread over a short time if interest had been paid, and if the amounts had been called a refund rather than a rate reduction, and we do not believe this characterization would have changed merely because the refunds were given to current customers rather than trying to locate the relevant past customers.

Florida Power relies heavily on Dominion Resources, Inc. v. United States, 219 F.3d 359 (4th Cir. 2000). There, a utility company, like Florida Progress over-collected anticipated taxes as a result of the Tax Reform Act of 1986. The company was subsequently ordered by state and federal regulatory authorities to "remit the $10 million in the form of a one-time payment to [its] customers, either

18

through an immediate credit to each customers' bill, or by check or wire transfer." Id. at 362. The IRS argued that this was not a "refund" because the $10 million payment did not go to the specific customers who were overcharged. The district court, however, found that the $10 million payment was a refund deductible as an ordinary and necessary business expense under 26 U.S.C. §162(a), and it rejected the IRS's matching argument, finding it was "not possible" to precisely match the amount of the refund to the specific customers overcharged. Id. at 368-69 (summarizing district court's holding). Relying on that factual finding, the Court of Appeals rejected the IRS's argument that there could be no refund where the company failed to precisely match the payments issued to the specific customers overcharged. Id. at 369. The court also noted that because the utility company returned the overcharge pursuant to a one-time, lump sum payment, there was no need for the company to provide interest. Id.

We believe that Dominion Resources is readily distinguishable from the instant case. The payments here were not issued in lump sum form; they were, instead, spread out over a twelve month period in the form of bill credits. Florida Power contends that this is a distinction without a difference, asking rhetorically why it matters whether the money was paid at one time or over a twelve month period. But there is a difference. One of the virtues of a lump sum payment is that

19

even though it may not reach all the persons overcharged, it is more likely to reach the persons affected than credits issued over a period of time because of the temporal proximity between the overcharges and the one-time payment (assuming that payment is made when the obligation is incurred). Moreover, whereas a lump sum payment may obviate the need to pay interest on the amounts returned to customers, that rationale does not apply where the company is in essence given a free loan by being allowed to retain that money over a twelve month period. Cf. Roanoke Gas Co. v. United States, 977 F.2d 131, 136 (4th Cir. 1992) ("[I]f [a utility] believed that . . . it [had] an obligation to make specific refunds to customers, one would expect it to have . . . at least paid interest on the funds ultimately returned."). Thus, we do not believe our holding is inconsistent with Dominion Resources. And, we believe our holding is consistent with the holdings of the Seventh and Eighth Circuit, which have both held that where a utility reduces its rates in order to compensate for over-collections of anticipated tax liablities, those rate reductions do not constitute deductible business expenses. See Wicor, Inc. v. United States, 263 F.3d 659, 661-62 (7th Cir. 2001) (denying utility company the benefit of § 1341 where that company was required to reduce its rates to reflect excess deferred income tax receipts in the wake of the Tax Reform Act of 1986); MidAmerican Energy Co. v. Commissioner, 271 F.3d 740,

20

743 (8th Cir. 2001) (same).

In light of the substantial evidence supporting the Tax Court's finding of fact, we cannot say that the court clearly erred when it found that the credits and checks issued here resembled rate reductions rather than refunds. Because the credits and checks were found to be reductions of income, rather than expenses, we agree with the Tax Court that these items cannot be deducted as ordinary and necessary business expenses under 26 U.S.C. §162(a).

### III.

In summary, §1341 is applicable only if another code section would provide a deduction for the item in the current year. And the Tax Court was not clearly erroneous in finding that the items at issue here resembled rate reductions and not refunds. Therefore, the items are not deductible and §1341 is inapplicable.

The judgment of the United States Tax Court is hereby

AFFIRMED.