T.C. Memo. 2007-89


UNITED STATES TAX COURT


ESTATE OF MELVINE B. ATKINSON, DECEASED, CHRISTOPHER J.
   MACQUARRIE, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
      COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2865-05L.              Filed April 17, 2007.



     A petition was filed on behalf of the estate for
judicial review pursuant to sec. 6330, I.R.C., in
response to a determination by R that levy action is
appropriate.

     <u>Held</u>:  R's determination to proceed with
collection is sustained.


<u>Mitchell I. Horowitz</u>, for petitioner.

<u>Stephen R. Takeuchi</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for judicial review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1]  The issue for decision is whether respondent abused his discretion in sustaining the proposed levy action for the Estate of Melvine B. Atkinson's (the estate) Federal estate tax liabilities.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) of 1986, as amended.

[2]In the stipulation of facts, the estate and respondent both reserved relevancy objections to attached exhibits.  Fed. R. Evid. 402 provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not admissible.  Fed. R. Evid. 401 defines the relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the relevancy of some exhibits is certainly limited, the Court finds that the exhibits meet the threshold definition of relevant evidence and are admissible.  The Court will give the exhibits only such consideration as is warranted by their pertinence to the Court's analysis of the case.

The estate also reserved objections based on Fed. R. Evid. 106, alleging that exhibits "[failed] to include communications between the Respondent's counsel and the Petitioner's prior counsel, who represented the Petitioner in protracted Tax Court litigation (including two appeals thereof)".  The Court overrules the estate's objection as the evidence the estate seeks admitted is not relevant to the instant case.

The estate also reserved objections, based on Fed. R. Evid. 403, "to the introduction of the Petitioner's personal affairs

(continued...)

The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

Melvine B. Atkinson (decedent) was a resident of Miami Beach, Florida, when she died testate on June 7, 1993. Christopher J. MacQuarrie (Mr. MacQuarrie) was appointed executor of decedent's estate. Mr. MacQuarrie was already serving as the trustee of decedent's trusts, the Melvine B. Atkinson Irrevocable Trust and the Melvine B. Atkinson Charitable Remainder Annuity Trust (collectively, the trusts).[3] At the time the petition was filed on behalf of the estate, Mr. MacQuarrie resided in Ocala, Florida.

---

[2](...continued)
* * * because its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues." The Court concludes that the documents in question do not create an undue risk of prejudice or confusion of the issues and are admissible.

Respondent also reserved objections to certain exhibits based "on the ground that these documents were not submitted to the revenue officer or settlement officer and therefore are not part of the administrative record." The Court noted respondent's objection but reserved its ruling. "[E]vidence that * * * [a taxpayer] might have presented at the section 6330 hearing (but chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because [where as here, the Appeals officer was open to receive the evidence at or before the hearing and was not ignoring proffered evidence] it is not relevant to the question of whether the Appeals officer abused her discretion." Murphy v. Commissioner, 125 T.C. 301, 315 (2005), affd. 469 F.3d 27 (1st Cir. 2006). The estate had ample opportunities to present evidence to respondent's revenue and Appeals officers. Accordingly, the Court sustains respondent's objection.

[3]On Aug. 9, 1991, decedent created the trusts and executed her Last Will and Testament.

An estate tax return was filed for decedent on September 13, 1994.  Thereafter, respondent audited the estate and determined a deficiency.  In response, the estate timely petitioned this Court.  The Court found that the estate was liable for a reduced deficiency.  See Estate of Atkinson v. Commissioner, 115 T.C. 26 (2000), affd. 309 F.3d 1290 (11th Cir. 2002).  On January 24, 2002, a deficiency of $717,790 plus interest was assessed against the estate.

Respondent issued to the estate a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 on March 10, 2004, with respect to the estate's unpaid estate tax.  The estate did not respond.  Respondent then issued to Mr. MacQuarrie a summons for appearance on April 6, 2004, at respondent's Ocala, Florida, office.  Additionally, the summons required Mr. MacQuarrie to bring to his summons appearance the following documents relating to the period of June 7, 1993, to March 1, 2004:  (1) A listing of all assets of the estate; (2) copies of statements of all bank accounts, stock accounts, or other asset accounts owned or controlled by the estate; (3) copies of all canceled checks for any bank accounts owned or controlled by the estate; and (4) a listing of all distributions made from the assets of the estate by source, date, amount, and payee.

Mr. MacQuarrie designated his attorney, Robert S. Williams (Mr. Williams), as his attorney-in-fact, on March 30, 2004, by

executing and delivering to respondent an Internal Revenue Service (IRS) Form 2848, Power of Attorney and Declaration of Representative. Mr. Williams began correspondence with Amelia Clark (Ms. Clark), the revenue officer appointed to handle the estate's unpaid tax liabilities. On April 5, 2004, the day before Mr. MacQuarrie was to appear in response to the summons, Mr. Williams spoke with Ms. Clark and requested that the summons appearance date be rescheduled to April 13, 2004.

On April 13, 2004, Mr. MacQuarrie and Mr. Williams met with Ms. Clark and her manager, Richard Bartholomew, at the IRS office in Ocala, Florida, to discuss the following: (1) The filing status of the estate's tax returns; (2) the current assets and liabilities of the estate; (3) the administrative expenses of the estate; (4) charitable distributions of approximately $340,000 to the Mayo Clinic from the estate; and (5) some personal affairs of Mr. MacQuarrie. During the meeting, Ms. Clark prepared a financial statement for the estate based on the information provided by Mr. MacQuarrie and Mr. Williams, but Mr. MacQuarrie, acting on advice from Mr. Williams, declined to sign the statement. At the end of the meeting, Ms. Clark informed Mr. MacQaurrie and Mr. Williams that the estate's delinquent tax returns were to be filed within 30 days and that Mr. MacQuarrie needed to submit a signed financial statement for the estate.

On June 1, 2004, Ms. Clark spoke with Mr. Williams and requested the following:  (1) Charles Schwab account information from January 1, 1999, through June 1, 2004, for the trusts; (2) information about the class action lawsuits in which the estate was a class member;[4] (3) information about the estate's real estate; (4) an original signed copy of the estate's financial statements, including those of the trusts; (5) a copy of the estate's court pleadings regarding fees; and (6) Mr. MacQuarrie's presence at the next meeting.  Shortly after Ms. Clark's and Mr. Williams' telephone conversation, the estate received by mail A Notice of Intent to Levy and Your Right to a Hearing, which had been issued by respondent on May 27, 2004.  In response, the estate timely submitted a Form 12153, Request for a Collection Due Process Hearing, on June 20, 2004.  In an attachment to Form 12153, Mr. Williams described the estate's disagreement with the levy, in pertinent part, as follows:

> The collection action in this case is premature, and
> the Internal Revenue Service should grant an extension
> of time to pay the outstanding estate taxes.  The
> assets remaining in the Estate consist of cash and
> security class action lawsuits of unknown value.  The
> cash remaining in the Estate is needed for
> administrative expenses to deal with the outstanding
> tax liability and the class action lawsuits.
>
> The class action lawsuits have no value that can be
> determined at this time, but have significant
> potential.  However, the expenses of levying them could

[4]The estate was a class member in the Citigroup, Sun Micro Systems, TYCO, and Worldcom class action lawsuits.

> exceed the actual value of such assets. As a result, the Estate's assets cannot be rightfully levied by the Government.
>
> * * * * * * *
>
> As a result of the revenue officer's failure to suggest a course for working this matter out, the taxpayer has not had the opportunity to seek possible collection alternatives. Such alternatives would include a partial payment immediately, with some cash being used to pursue the class action claims. Hopefully, the class action cases will then bring sufficient sums to cover the outstanding estate taxes. Or the Estate could pursue an Offer in Compromise based on doubt as to the Estate's ability to pay the tax liability. Or the taxpayer could pursue some other alternative based upon the good faith suggestions of the government. In any event, a levy is not an appropriate action to take under the circumstances.

On April 27, 2004, the estate submitted a Form 433-B, Collection Information Statement for Businesses, which indicated that the estate had $338,720.19 in investments and $162,169 in cash.

By letter dated November 2, 2004, to Mr. Williams, a face-to-face Appeals conference was initially scheduled for November 22, 2004, at the Appeals Office in Tampa, Florida. On November 19, 2004, Mr. Williams spoke with James Feist (Mr. Feist), the Appeals officer assigned to the estate's case, and they agreed to postpone the scheduled hearing for 2 to 3 weeks to allow the estate additional time to prepare the delinquent tax returns. The face-to-face hearing was rescheduled for December 17, 2004. Mr. Williams called Mr. Feist the morning of the rescheduled hearing to request another postponement. Mr. Williams explained that he had changed law firms and was experiencing difficulty in

obtaining client files from his previous firm that were needed to complete the estate's tax returns.[5] Mr. Feist declined Mr. William's request for another extension and told Mr. Williams that the hearing would be held that day, either in-person or telephonically.

A telephonic collection hearing was held on December 17, 2004, between Mr. Feist and Mr. Williams. During the hearing, Mr. Feist declined to discuss collection alternatives, explaining to Mr. Williams that the estate was precluded from collection alternatives due to its delinquent tax returns, and informed Mr. Williams that he would issue a notice of determination sustaining the levy. Mr. Feist provided Mr. Williams with the following suggestions: (1) Forward the delinquent returns and old brokerage statements to Ms. Clark; (2) estimate the remaining administrative costs needed to close the estate (including the collection activity); and (3) pay to respondent the money the estate receives from the Mayo Clinic.[6]

---

[5]Mr. Williams changed law firms from Akerman Senterfitt to Straley Robin & Williams, both of which were located in Tampa, Florida. Mr. Williams was experiencing difficulty in obtaining files because of an alleged dispute between the estate and Akerman Senterfitt over allegedly unpaid fees related to the estate's litigation in the Tax Court and the Court of Appeals for the Eleventh Circuit.

[6]The estate was to request the return of approximately $340,000 in charitable distributions to the Mayo Clinic.

The notice of determination in this case was issued on January 7, 2005. The notice of determination reflected that the unpaid estate tax liability was $1,650,674.72, as calculated through March 10, 2004. An attachment to the notice of determination stated in relevant part:

> The four basic collection alternatives to avoid enforced collection action are full payment, installment agreement, Offer in Compromise, or closing the account as "Currently Not Collectible" based on financial hardship. Outside of full payment, procedures for the other collection alternatives require that the entity file any outstanding tax returns and that the entity submit a full financial statement and verification information for analysis. Neither of these two requirements has been fulfilled by the estate.

> &ast; &ast; &ast; &ast; &ast; &ast; &ast;

> At the point the Notice of Intent to Levy was mailed, the value of the estate had dwindled from a reported $7 million in January 2000 to $338,720.19 as reported on the Form 433-B financial statement signed by Mr. MacQuarrie on April 13, 2004. No payments of any amount have been remitted toward the assessments of January 24, 2002. Without full financial disclosure and full compliance with outstanding returns, no collection alternative is available outside of full payment.

> &ast; &ast; &ast; &ast; &ast; &ast; &ast;

> The class action lawsuits have not been initiated by the estate. Therefore there should be no administrative expenses necessary to monitor them. The only known administrative expenses accruing at this time are for return preparation and Collection/Appeals representation.

> &ast; &ast; &ast; &ast; &ast; &ast; &ast;

> &ast; &ast; &ast; The enforcement action taken by the Collection Division in issuing the Notice was appropriate and

reasonable under the circumstances, and all legal and procedural requirements were met.

The estate has failed to file returns, failed to provide full financial disclosure, failed to make significant voluntary payments on the amount due, and failed to submit a viable collection alternative.  As a result, it has failed to show that the issuance of the Notice is overly intrusive or that a better collection alternative is available.  Therefore, the issuance of the Notice balances the efficient collection of the taxes with a concern that the collection action be no more intrusive than necessary.

A timely petition was filed with this Court on February 4, 2005.

A hearing was held on November 14, 2005, where pending motions were disposed of, and the trial was started with the filing of the stipulation of facts.[7]  The parties indicated that the only witness would be Mr. Williams unless there was a rebuttal witness called.  The estate asked to delay Mr. Williams' testimony for up to 30 days so that another attorney could be employed to conduct Mr. Williams' examination.  The request was granted, and the trial was adjourned until December 14, 2005. Subsequently, on December 14, 2005, the trial was continued so

---

[7]In the stipulation of facts, the estate reserved evidentiary objections to the contact sheets based on Fed. R. Evid. 404, which provides in pertinent part "Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion".  The estate's reliance on Fed. R. Evid. 404 is misplaced as respondent is not attempting to prove any act on the part of Mr. MacQuarrie, and Mr. MacQuarrie was not called as a witness at trial.  The Court concludes that the contact sheets are admissible.

that Mr. Williams could provide testimony regarding his contact with respondent's revenue and Appeals officers.[8]

At trial, Mr. Williams' uncontested testimony established that at the time the estate received the notice of intent to levy, the estate and respondent were still communicating, exchanging documents and information, and working to arrange for the payment of the estate taxes. Specifically, Mr. Williams stated that during his conversation with Ms. Clark on June 1, 2004, she did not inform him that the notice of intent to levy had been issued, and instead requested information and documents, which caused him to believe that they were still cooperating.

OPINION

I. Collection Action

A. General Rules

Pursuant to section 6331(a), if a taxpayer liable to pay taxes fails to do so within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy upon the taxpayer's property. The Secretary is obliged to provide the taxpayer with 30 days' advance notice of levy and to include in the notice information regarding the administrative appeals available to the taxpayer. Sec. 6331(d)(2), (4). Section 6330 elaborates on section 6331 and provides that upon a

---

[8]The Court granted Mr. Williams' oral motion to withdraw as counsel on Dec. 14, 2005. Mitchell I. Horowitz replaced Mr. Williams as the estate's counsel.

timely request a taxpayer is entitled to a collection hearing before the IRS Office of Appeals.  Sec. 6330(a)(3)(B) and (b)(1).

At the collection hearing, the taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives.  Sec. 6330(c)(2)(A).  The taxpayer may not contest the validity of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  In rendering a determination, the Appeals officer must verify that the requirements of any applicable law and administrative procedure have been met.  Also, the Appeals officer must consider and weigh relevant issues relating to the unpaid tax or proposed levy, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C).

The taxpayer is entitled to appeal the determination of the Appeals Office if made on or before October 16, 2006, to the Tax Court or a U.S. District Court, depending on the type of tax at

issue.  Sec. 6330(d)(1).[9]  Where the validity of the underlying
tax liability is properly at issue, the Court will review the
matter de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000);
Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The Court
reviews any other administrative determination regarding the
proposed levy action for an abuse of discretion.  Sego v.
Commissioner, supra at 610; Goza v. Commissioner, supra at 182.

B. Review for Abuse of Discretion

The estate tax liability was previously litigated and
determined by this Court.  That decision was affirmed by the
Court of Appeals for the Eleventh Circuit.  See Estate of
Atkinson v. Commissioner, 115 T.C. 26 (2000), affd. 309 F.3d 1290
(11th Cir. 2002).  Accordingly, the estate's underlying tax
liability is not properly at issue, and the administrative record
will be reviewed for an abuse of discretion.  An abuse of
discretion has occurred if the "Commissioner exercised * * *
[his] discretion arbitrarily, capriciously, or without sound
basis in fact or law."  Woodral v. Commissioner, 112 T.C. 19, 23
(1999).

The estate argues that respondent abused his discretion for
the following reasons:  (1) The estate's administrative expenses
were not considered adequately by respondent; (2) Ms. Clark had

---

[9]Determinations made after Oct. 16, 2006, are appealable
only to the Tax Court.  See Pension Protection Act of 2006, Pub.
L. 109-280, sec. 855, 120 Stat. 1019.

insufficient information to make any collection determination; (3) Mr. Feist issued the notice of determination after being assigned the case for only 2 months, "which was a grossly inadequate period of time given the complexities of the case"; and (4) Mr. Feist insisted on proceeding with the final hearing even though Mr. Williams had not yet recovered his files.

The estate alleges that respondent failed to consider adequately the administrative expenses of the estate. However, the notice of determination indicates that Mr. Feist considered all of the administrative expenses that the estate raised. The Appeals officer determined that expenses relating to the class action lawsuits were not appropriate expenses of the estate because the estate did not initiate the litigation and did not need to incur those expenses. The notice of determination also indicates that Mr. Feist considered the administrative expenses of the estate related to preparing the estate's tax returns and pursuing the collection hearing. Thus, the record reflects that appropriate consideration was given to the administrative expenses raised by the estate. Accordingly, the Court concludes that respondent did not abuse his discretion in this regard.

The estate contends that respondent abused his discretion because Ms. Clark lacked sufficient information to make a collection determination, and Mr. Feist held the collection hearing before Mr. Williams retrieved his files. "An Appeals

officer does not abuse her discretion when she fails to take into account information that she requested and that was not provided in a reasonable time."  Murphy v. Commissioner, 125 T.C. 301, 315 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Ms. Clark initially requested at Mr. MacQuarrie's April 13, 2004, summons appearance that the estate file the estate's delinquent tax returns within 30 days.  After the 30 days had lapsed and the estate failed to comply, Ms. Clark issued the above-mentioned Notice of Intent to Levy and Your Right to a Hearing on May 27, 2004.  Almost 6 months later, on November 19, 2004, and only days before the estate's previously scheduled collection hearing, the estate requested a delay in the hearing date to afford the estate additional time to prepare the returns.  Mr. Feist obliged and rescheduled the collection hearing for December 17, 2004.  On the morning of the rescheduled hearing, the estate once again asked for additional time to prepare the returns.  Mr. Feist declined the estate's request.

In total, from the time Ms. Clark initially requested the estate's delinquent tax returns, the estate had approximately 8 months to prepare and file the returns and failed to do so.  In Roman v. Commissioner, T.C. Memo. 2004-20, this Court stated:

> No statutory or regulatory provision requires that taxpayers be afforded an unlimited opportunity to supplement the administrative record.  Nor are petitioner's contentions regarding lack of warning well taken where the record in this case is replete with

> explicit deadlines that respondent generously extended for petitioner's benefit.

The Court concludes that respondent did not abuse his discretion by: (1) Failing to take into account information respondent requested of the estate and that the estate failed to produce; and (2) proceeding with the collection hearing despite the estate's lack of files. See Morlino v. Commissioner, T.C. Memo. 2005-203; Roman v. Commissioner, supra.

The estate also alleges that Mr. Feist spent a "grossly inadequate period of time" considering the case. The regulations promulgated under section 6330 provide that there is no period of time within which the Appeals Office must conduct a collection hearing or issue a notice of determination. The regulations provide, in pertinent part, that while there is no set time deadline to conduct the Appeals hearing, "Appeals will, however, attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. "[T]here is neither requirement nor reason that the Appeals officer wait a certain amount of time before rendering his determination as to a proposed levy." Clawson v. Commissioner, T.C. Memo. 2004-106; see Murphy v. Commissioner, supra at 322; Manjourides v. Commissioner, T.C. Memo. 2005-242; Morlino v. Commissioner, supra.

In <u>Clawson v. Commissioner</u>, <u>supra</u>, the notice of determination was issued less than 3 months after the taxpayers requested a collection hearing and only 9 days after the telephonic collection hearing was conducted. In <u>Manjourides v. Commissioner</u>, <u>supra</u>, less than 3 weeks passed between the telephonic collection hearing and the issuance of the notice of determination. In the instant case, the notice of determination was issued more than 6 months after the estate requested a collection hearing. The record reflects that Mr. Feist had the estate's case under consideration starting sometime between September 1 and October 22, 2004. The telephonic collection hearing was held on December 17, 2005, and the notice of determination was issued approximately 3 weeks later on January 7, 2005.

In total, Mr. Feist had the estate's case under consideration for at least 2 months and as many as 4 months. While Mr. Feist may have been predisposed to an expeditious conclusion of the estate's case, the Court sees nothing wrong with that, given the facts of the instant case. See <u>Morlino v. Commissioner</u>, <u>supra</u>. Suffice it to note that the determined deficiency to be collected was $717,790, plus interest, and that as of March 10, 2004, the total amount due was $1,650,674.72. Due to questionable investments and other factors, including legal fees contesting this very tax deficiency, the estate had

already shrunk from over \$7 million to \$500,889.19[10] by March 13, 2004, ignoring speculative class action assets. Respondent did not abuse his discretion by expeditiously deciding the estate's case if, in fact, 2 to 4 months is expeditious.

II. Conclusion

The Court concludes that respondent's determination to proceed with collection by levy of the estate taxes was not an abuse of discretion, and respondent may proceed with collection.

The Court has considered all of the estate's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[10]This amount consists of \$338,720.19 in investments and \$162,169 in cash.